FILED
CLERK OF COURT

2025 NOV -4 PM 2:39

SUPERIOR COURT
OF GUAM

# IN THE SUPERIOR COURT OF GUAM

PEOPLE OF GUAM,

vs.

FLORENCIA UNGIL SIKEBERT aka
Florencia Ungil Sikebert aka Flo,

Defendant.

CRIMINAL CASE NO. CF0343-24

## DECISION AND ORDER

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on October 17, 2025, for hearing on Defendant **FLORENCIA UNGIL SIKEBERT aka Florencia Ungil Sikebert aka Flo's** ("Defendant") Motion to Suppress. Present were Assistant Attorney General Cristopher Grey on behalf of the People of Guam ("the Government") and Defendant with counsel, Assistant Public Defender Mary Hill. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

On June 7, 2024, Defendant was indicted with the following charges: (1) Theft of Property (As a Second Degree Felony) with Special Allegation: Crimes Against the Community; and (2) Official Misconduct (As a Misdemeanor) with Special Allegation: Crimes Against the Community. (Indictment, Jun. 7, 2024). These charges are based on allegations that Defendant stole $5,860.00 cash from the University of Guam Business Office while she was employed there as a cashier. (Decl. of Gloria Ann L. Rudolph, Am. Magistrate's Compl., May 23, 2024).

On September 24, 2025, Defendant filed the instant Motion. On October 14, 2025, the Government filed its Opposition.

On October 17, 2025, the Court heard sworn testimony from Maria Louise L. Jorolan, Guam Police Department ("GPD") Officer Aaron Manglona, GPD Officer Sean Magada, and Defendant.

The Court ascertained the following facts from the witness testimony:

1. In 2024, Defendant was employed at the University of Guam Business Office as a cashier. Defendant's immediate supervisor was Maria Louise L. Jorolan.

2. On May 8, 2024, Ms. Jorolan spoke to GPD Officer Crisostomo about missing money. Ms. Jorolan testified that Defendant was not in the office on that day because she had called in sick a few days before her last day with the University.

3. After that date, Ms. Jorolan spoke to Defendant through messages and had dinner with Defendant and another co-worker after Defendant's employment with UOG. Ms. Jorolan could not recall the exact date of the dinner but knew it was in the same month.

4. During the dinner, Ms. Jorolan recalled teasing Defendant because she had received an increment for her last paycheck and joked that Defendant would be treating them to dinner. Ms. Jorolan indicated that they spoke about UOG times and what Defendant was planning to do.

5. Ms. Jorolan testified that it might have come up in conversation that they had spoken to the police and that they might want to speak with her as well. Ms. Jorolan testified that she mentioned that everyone in the office that was involved or in the cashier office that day has spoken to the police and they also needed to speak to her. Since Defendant was not at work the day that they were present, she would need to speak to the police herself.

6. Ms. Jorolan denied telling Defendant that she would not receive her paycheck if she did not speak to police. Ms. Jorolan testified that she does not sign or control the checks and that she does not have the right to say she does not get her paychecks.

7. Ms. Jorolan denied ever threatening Defendant about not speaking with the police that night. Ms. Jorolan testified that they ended the night on good terms.

8. Ms. Jorolan testified that although the evaluation indicated a pay raise was not recommended but because the form was not turned in prior to Defendant's anniversary with the University she was entitled to a raise.

9. On May 22, 2024, Defendant went to the Central Precinct.

10. Officers Manglona and Magada were told by desk watch that Defendant had walked into the precinct regarding the open theft of property complaint. Officers Manglona and Magada were briefed by Officer Crisostomo about the complaint prior to approaching Defendant.

11. Officer Manglona observed Defendant sitting on a chair watery eyed.

12. Officer Magada testified that Defendant appeared to be nervous.

13. Defendant told the officers that her boss asked her to come down to the precinct to provide a statement.

14. Defendant was brought into an interview room by Officer Manglona and Officer Magada and was advised her *Miranda* rights.

15. Officer Manglona asked Defendant about money that was missing that had been received by her. Defendant first admitted that she did receive the money and then recanted her statement and said that her co-worker received the money. When asked what happened to the money and why it wasn't inputted into the database, Defendant stated that they were busy and that her co-worker put it inside the cash box.

16. At some point in the interview Defendant admitted to taking the money and said that she used it for bills, groceries, and gave some money to her mom. Defendant left the money inside a cabinet in a storage room and took from it in increments.

17. Officer Manglona and Officer Magada both testified that they did not yell or threaten Defendant at any time and that she was free to end the interview at any time.

18. Officer Manglona testified Defendant did not mention anything about being threatened to speak to the police or anything about her paycheck during the interview.

19. Defendant wrote a written statement. The written statement did not include any statement about not receiving a paycheck for work.

20. Defendant testified that she went to the police station because she received a message via WhatsApp from her supervisor saying that if she doesn't go and give a statement, she won't receive her last check. Defendant testified that she received the message the day before she went to the precinct.

21. Defendant testified that if she did not receive her pay check she would be struggling to meet her and her mother's bills.

22. Defendant did not have a copy of the WhatsApp message.

## DISCUSSION

Defendant moves the Court to suppress all statements made to the police because they "were made at the behest of the state with the threat of withholding wages for noncompliance." (Mot. Suppress at 6). Defendant argues that she was forced "to choose between her economic well-being and her fifth amendment right against self-incrimination." *Id.* at 5. The Government opposes, arguing that *Garrity* does not apply as "the admissions made by the Defendant were not made to her employer under threat of termination from employment but rather were made to law enforcement that were investigating a criminal matter that neither threatened the Defendant of termination from her employment or deprivation of her paycheck." (Opp'n at 3).

The Fifth Amendment of the Constitution of the United States provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. Amend. V. "The answers of such a witness to questions put to him are not compelled within the meaning of the Fifth Amendment unless the witness is required to answer over his valid claim of the privilege." *Minnesota v. Murphy,* 465 U.S. 420, 427 (1984). Under *Garrity v. New Jersey,* 385 U.S. 493 (1967), when a person is either given the "option to lose their means of livelihood or to pay the penalty of self-incrimination [it] is the antithesis of free choice to speak out or to remain silent. That practice, like interrogation practices . . . reviewed in *Miranda v. State of Arizona,* is likely to exert such pressure upon an individual as to disable him from making a free and rational choice." 385 U.S. at 497. Thus, "the protection of the individual under the Fourteenth

Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under the threat of removal from office." *Id.* at 500. "*Garrity* immunity is contingent upon the degree of certainty that an employee's silence alone will subject the employee to severe employment sanctions." *United States v. Palmquist,* 712 F.3d 640, 645 (1st Cir. 2013). "[A] public employee may not be coerced into surrendering his Fifth Amendment privilege by threat of being fired or subjected to other sanctions, and cannot be forced to choose between self-incrimination or job forfeiture." *United States v. Vangates,* 287 F.3d 1315, 1320 (11th Cir. 2002).

At the time Defendant went to Central Precinct Command to provide her statement to GPD, she was no longer employed with the University of Guam as she had resigned. Therefore, there was no threat that she would lose her job if she did not make a statement. Defendant argues, however, that she was told she would not receive her last paycheck if she did not speak with the police. "The state is prohibited . . . from compelling a statement through economically coercive means, whether they are direct or indirect." *United States v. Montanye,* 500 F.2d 411, 415 (2d. 1974). "In the absence of a direct threat, [the court] determine[s] whether the [employee's] statements were compelled by examining her belief, and more importantly, the objective circumstances surrounding it." *Vangantes,* 287 F.3d at 1321-22.

At the hearing, GPD Officers Manglona and Magada testified that Defendant told them she was at the precinct because her boss had *asked* her to make a statement. Ms. Jorolan testified that all employees of the cashier's office were to be interviewed about the incident and Defendant had not spoken to the police previously because she was not present the day they came to the University. Both GPD Officers testified that Defendant never told them about being threatened to speak to the police or anything about her paycheck during their interview. Officers Manglona and Magada also testified that they did not threaten Defendant at any time and that she was free to end the interview at any time. Although Defendant testified that she was sent a WhatsApp message from her supervisor telling her that she will not receive her last paycheck if she does not go to the precinct, she was unable to provide the actual WhatsApp message. Her supervisor, Ms. Jorolan, denied telling Defendant that she would not receive her paycheck if she did not speak to the police. Ms. Jorolan further testified that she does not sign or control the checks and that she

does not have the right to say Defendant does not get her paycheck. In light of all these facts, the Court declines to find that Defendant's subjective belief that she would not receive her last paycheck if she did not go to the police was objectively reasonable and denies Defendant's Motion to Suppress.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress.

**IT IS SO ORDERED** this 4TH day of November, 2025.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**

I acknowledge that an electronic
Copy of the original was e-mailed to

AG, PDSC

Date 11/4/25 Time. 2:46pm
Albert Calday
Deputy clerk, Superior Court of Guam